**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| KAY KIM,           Plaintiff, | ) ) ) |
| v. | ) No. 1:05-cv-1616-SEB-JMS |
| | ) |
| DEPUTY BRIGID BARNES, MCSD, DEPUTY LARRY CROWE, MCSD, | ) ) |
| | ) |
| Defendants. | ) |

**Entry Discussing Motion for Summary Judgment**

As used in this Entry, "Kim" refers to the plaintiff, Kay Kim, "Deputy Barnes" refers to Deputy Marion County Sheriff Brigid Barnes, and "Deputy Crowe" refers to Marion County Deputy Sheriff Larry Crowe. All events described in this Entry occurred on May 18, 2005, unless specified otherwise. Kim's claims against the defendants are brought pursuant to 42 U.S.C. § 1983. Specifically, Kim alleges that she was arrested in violation of the Fourth Amendment because she was arrested without a warrant and without probable cause being present. Kim also claims that the defendants used constitutionally excessive force in the course of her arrest.

The defendants seek resolution of Kim's claims through the entry of summary judgment.[1] Having examined the pleadings, the defendants' motion for summary judgment, Kim's responses to the motion and the defendants' reply, and being duly advised, the court finds for the reasons explained in this Entry that the motion for summary judgment must be **granted.**

---

[1] A court will grant summary judgment if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Scott v. Edinburg,* 346 F.3d 752, 755 (7th Cir. 2003) (quoting **FED.R.CIV.P.** 56(c) and citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.*
   The Supreme Court has explained that the purpose of Rule 56 is to "enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues." *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888 (1990). The means by which this is accomplished is by "pierc[ing] the pleadings and . . . assess[ing] the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

**Discussion**

To state a claim under § 1983, a plaintiff must allege (1) that she was deprived of a right secured by the Constitution or laws of the United States and (2) that the deprivation was caused by a person acting under color of state law.[2] In order to be held liable for a violation of § 1983 in an individual capacity, a defendant person must be "personally responsible for the deprivation of a constitutional right."[3] Such personal responsibility exists if the conduct causing a constitutional deprivation occurred at the individual's direction or with his knowledge or consent. Thus, "some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery."[4]

Section 1983 is not itself a source of substantive rights; instead it is a means for vindicating federal rights elsewhere conferred."[5] Accordingly, "the first step in any [§ 1983] claim is to identify the specific constitutional right infringed."[6] The right implicated by Kim's claims is the Fourth Amendment's guarantee against unreasonable seizures. The Fourth Amendment protects against unreasonable searches and seizures.

*The Arrest.* "A warrantless arrest without probable cause violates the Constitution and forms the basis for a section 1983 claim."[7] Conversely, police may make warrantless arrests based on probable cause.[8]

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed. Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."[9] A law enforcement officer has probable cause to arrest a suspect "when the totality of the facts and circumstances within his knowledge and of which he has reasonably trustworthy information is sufficient to warrant a prudent person in believing the suspect committed or

---

[2] *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155-56 (1978).

[3] *Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir. 1995) (citing *Sheik-Abdi v. McClellan,* 37 F.3d 1240, 1246 (7th Cir. 1994), *cert. denied,* 513 U.S. 1128 (1995)).

[4] *Gentry,* 65 F.3d at 555 (citing *Wolf-Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir. 1983).

[5] *Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir. 1997) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

[6] *Albright v. Oliver,* 510 U.S. 266, 271 (1994).

[7] *Marx v. Gumbinner,* 905 F.2d 1503, 1505 (11th Cir. 1990).

[8] *United States v. Watson,* 423 U.S. 411, 418 (1976).

[9] *Devenpeck v. Alford,* 125 S. Ct. 588, 593 (2004) (citations omitted).

was committing an offense."[10]  "Determinations of probable cause are naturally based on probabilities, and a finding of probable cause 'does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime.'"[11]

The evidentiary record in this case shows the following relative to Kim's arrest:[12] Deputy Barnes was dispatched to 4230 Village Parkway Circle E., #4, Indianapolis, Indiana, regarding a property dispute between Sharon Overly ("Overly") and Kim at a condominium complex. Overly owns a condominium at 4230 Village Parkway Circle E., #4. Deputy Barnes was informed by Overly that Kim had been harassing Overly by standing on Overly's property and repeatedly rapping on Overly's glass patio door with her cane.

Deputy Barnes went to Kim's residence to get Kim's version of the events. Kim refused to give her version of the events. Instead, Kim began screaming at Deputy Barnes and raising her cane toward Deputy Barnes in an aggressive manner. Deputy Barnes explained to Kim that Kim needed to stay away from Sharon Overly's property. Deputy Barnes informed Kim that if Kim returned to Overly's property, Kim would be arrested for criminal trespass. Deputy Barnes then left the condominium complex.

Approximately 20 minutes after leaving the condominium complex, Deputy Barnes received another dispatch to go to 4230 Village Parkway Circle E., #4, regarding a disturbance. When Deputy Barnes returned to Overly's address, Deputy Barnes observed

---

[10] *Marshall v. Teske,* 284 F.3d 765, 770 (7th Cir. 2002).

[11] *United States v. Funches*, 327 F.3d 582, 586 (7th Cir. 2003) (quoting *United States v. Carrillo*, 269 F.3d 761, 766 (7th Cir. 2001)).

[12] Kim has opposed the defendants' motion for summary judgment, but has not done so with evidentiary materials. "[A] party's failure to comply with summary judgment evidentiary requirements is traditionally remedied . . . by excluding the non-conforming submission and deeming the opposing party's proposed findings of fact admitted and then determining whether those facts entitle the moving party to judgment as a matter of law." *Ziliak v. AstraZeneca LP,* 324 F.3d 518, 520 (7th Cir. 2003) (citing cases). Accordingly, the factual assertions on which the defendants' motion for summary judgment is based and which are supported by the evidentiary record are accepted as true for the purpose of resolving that motion. *Corder v. Lucent Techs., Inc.,* 162 F.3d 924, 927 (7th Cir. 1998); *Flaherty v. Gas Research Inst.,* 31 F.3d 451, 453 (7th Cir. 1994); *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 921-22 (7th Cir. 1994). This is the result of Local Rule 56.1(h), of which the plaintiff was notified. This is a requirement fully warranting enforcement, even when the nonmovant is proceeding without counsel. *See, e.g., Greer v. Bd. of Educ., of the City of Chicago,* 267 F.3d 723, 727 (7th Cir. 2001); *Members v. Paige,* 140 F.3d 699, 702 (7th Cir. 1998) (stating that procedural rules "apply to uncounseled litigants and must be enforced"). The Seventh Circuit has "consistently and repeatedly upheld" district courts' discretion to require compliance with the local rules governing summary judgment. *Bordelon v. Chicago Sch. Reform Bd. of Trustees,* 233 F.3d 524, 527 (7th Cir. 2000); *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 922 (7th Cir. 1994) (collecting numerous cases).

Kim sitting one inch from the edge of Overly's patio with her cane touching the patio. Deputy Barnes continued to command Kim to stand up, but Kim began to pull away from Deputy Barnes and continued to reach from her cane, which had been placed approximately 3 feet from her. Kim was restrained and placed under arrest. In being escorted to the police car, Kim pulled away from Deputy Barnes.

After Kim was in handcuffs, Deputy Crowe arrived on the scene. Deputy Crowe did not arrest Kim, who was already under arrest when Deputy Crowe arrived at the scene. Deputy Crowe did not touch Kim. Deputy Crowe did not observe Deputy Barnes or any other police officer mistreat Kim during or after her arrest.

As a result of the incident, Kim was charged with resisting law enforcement under IND. CODE § 35-44-3-3 and criminal trespass under IND. CODE § 35-43-2-2. These are charges associated with the reason for Kim's arrest. Both charges are pending under Marion County Superior Court under cause number 49F08-0505-CM-083990.

Criminal trespass is defined by Indiana statute as the following:

(a) A person who:
(1) not having a contractual interest in the property, knowingly or intentionally enters the real property of another person after having been denied entry by the other person or that person's agent;
(2) not having a contractual interest in the property, knowingly or intentionally refuses to leave the real property of another person after having been asked to leave by the other person or that person's agent;
. . .
commits criminal trespass, a Class A misdemeanor. . . .[13]

In this case, there was ample probable cause for Kim's arrest for criminal trespass. This consisted of the information Overly related to Deputy Barnes and to the observations made by Deputy Barnes on her return trip to the premises after have conversed with Kim about the going onto Overly's patio. This conversation had included Kim being warned that she would be arrested for criminal trespass if she returned to Overly's property. In fact, when Deputy Barnes returned, she observed Kim engaged in trespassing on Overly's property. In light of the foregoing statutory definition of the crime, the totality of the facts and circumstances known to Deputy Barnes and of which she either had personal knowledge of reasonably trustworthy information was sufficient to warrant her in believing that Kim had committed or was committing the crime of criminal trespass by knowingly or intentionally entering Overly's real property after having been denied entry by the other person or that person's agent or knowingly or intentionally refusing to leave Overly's property after having been directed to do so.

---

[13]Indiana Code § 35-43-2-2.

4

The defendants are also correct in their argument that Deputy Barnes had probable cause to arrest Kim for resisting law enforcement. This consisted of the resistance Kim exhibited during Deputy Barnes' attempt to handcuff Kim.  Specifically, Kim refused to stand up and rolled herself up in a ball, had to be lifted to her feet, began twisting and pulling from Deputy Barnes in an ultimately successful attempt to sit back down on the ground. From these circumstances, Deputy Barnes had information sufficient for her to believe that Kim was resisting the effort to arrest her and in doing so was committing the crime of resisting law enforcement.[14]

The uncontradicted record in this case shows that there was probable cause for Kim's arrest. "It is well settled that the actual existence of probable cause to arrest precludes a § 1983 suit for false arrest."[15] Accordingly, the defendants are entitled to the entry of summary judgment as to Kim's claim of being arrested in the absence of a warrant or probable cause.

The defendants also point out that Kim had been arrested and was in custody by the time Deputy Crowe arrived at the scene. Deputy Crowe did not arrest Kim, did not direct Deputy Barnes to arrest Kim, did not observe the events which provided Deputy Barnes with probable cause to arrest Kim, and had no opportunity to intervene in those events. Aside from the foregoing explanation concerning the warrantless but lawful arrest of Kim, therefore, Deputy Crowe was not responsible for that arrest and could not be held liable for it.

*The Use of Force.*  "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."[16]  Nonetheless, the Fourth Amendment prohibits the use of excessive force during the execution of a seizure.[17]

The evidentiary record relative to Kim's claim that excessive force was used against her in the course of her arrest is the following: On her return to Overly's condominium, Deputy Barnes reached out to secure Kim's cane while directing Kim to stand up. Deputy

---

[14](a) A person who knowingly or intentionally:
(1) forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties;
. . .
commits resisting law enforcement, a Class A misdemeanor. . . .

[15]*Juriss v. McGowan,* 957 F.2d 345, 349 n.1 (7th Cir. 1992) (citing *Schertz v. Waupaca County,* 875 F.2d 578, 582 (7th Cir. 1989)).

[16] *Graham v. Connor,* 490 U.S. 386, 396 (1989).

[17]*Id.* at 395 (holding that the Fourth Amendment's objective reasonableness test is the appropriate standard for evaluating excessive force claims).

5

Barnes took this action because she felt that Kim had used her cane towards her in a threatening manner on her previous visit to the premises. Kim clutched the cane to her chest, balled up, and told Deputy Barnes that she did not have to do what the officer directed her to do. Deputy Barnes was able to wrestle Kim's cane away from her and moved the cane approximately 3 feet away from her.

Deputy Barnes continued to command Kim to stand up; however, Kim began to pull away from Deputy Barnes and continued to reach from her cane. While repeatedly telling Kim to stop fighting and stop resisting, Deputy Barnes finally was able to lift Kim to her feet and to secure Kim's hands behind her back. Kim then swung her own body so that she was leaning over Overly's concrete patio and attempted to fall onto the patio.

However, Deputy Barnes was able to move Kim so that she was back over the grass and was able to handcuff her. While continuing to yell at Deputy Barnes, Kim was able to pull herself from Deputy Barnes's grasp and throw herself into a sitting position on the grass. Deputy Barnes was able to get Kim back up on her feet. As Deputy Barnes was walking Kim toward the police car, Kim began to push back toward Deputy Barnes so that the officer had to press Kim's back with her hands in order to keep Kim moving forward. Deputy Barnes did not apply any pressure to Kim's pressure points. After Kim was in handcuffs, Deputy Crowe arrived on the scene. Deputy Crowe did not touch Kim. Deputy Crowe did not observe Deputy Barnes or any other police officer mistreat Kim during or after her arrest. Based on Kim's behavior, Deputy Barnes had her transported to Wishard Hospital because of Deputy Barnes' concerns with Kim's mental or emotional state, not because of any fear that Kim had suffered a physical injury.

As the foregoing account makes clear, no force was used against Kim by Deputy Crowe. This defendant could therefore not be liable for what occurred. The account also shows, that some force was used by Deputy Barnes in attempting to handcuff Kim, in preventing Kim from committing a further trespass onto Overly's property, and in escorting Kim to the police car. In light of the totality of the circumstances, however, and particularly in light of Kim's persistent resistance to Deputy Barnes' lawful commands at each of these points, the force used against her was objectively reasonable. The evidence does not show a gratuitous beating by the officers nor the use of weapons. Although the only potential weapon involved here was Kim's cane, the situation was precisely of the character described in *Graham*--tense, uncertain, and rapidly evolving. Kim's behavior was defiant, oppositional, physically difficult to control, and continuing, even after she was in handcuffs. Faced with this "totality of the circumstances," and absent any evidence from Kim which creates a genuine issue of fact as to these circumstances, only a single conclusion is supported by the record; that decision is that, as a matter of law, the amount of force applied by Deputy Barnes in effecting Kim's arrest did not exceed the amount necessary to overcome her resistance. Deputy Barnes thus did not use constitutionally excessive force.[18]

The defendants are therefore entitled to summary judgment in their favor as to Kim's claim of the excessive use of force.

---

[18] *See Estate of Phillips,* 123 F.3d at 592-93 (where an offender is resisting arrest, an officer can use that amount of force necessary to overcome the offender's resistance); *Jones by Jones v. Webb*, 45 F.3d 178 (7th Cir. 1995).

## Conclusion

"The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."[19] No Fourth Amendment violation occurred by virtue of Kim's warrantless arrest on May 18, 2005, or in the force used to overcome her resistance to the arrest.

Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial."[20] The moving party can satisfy the burden of showing the absence of a genuine question of material fact in two ways: (1) by presenting evidence that negates an essential element of the non-moving party's case or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.[21] *See id.* at 322-23. The defendants have met that burden in this case by each of these methods. Accordingly, their motion for summary judgment is **granted,** and judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 02/28/2007

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

[19] *Wyatt v. Cole,* 112 S. Ct. 1827, 1830 (1992).

[20] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[21] *See id.* at 322-23.